**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DENNIS W VANICOR ET AL** | **CASE NO.  2:25-CV-00061** |
| **VERSUS** | **JUDGE ALEXANDER C. VAN HOOK** |
| **BARNES TRANSPORTATION SERVICES INC ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court is Defendant's Motion to Dismiss with Prejudice, filed by Barnes Transportation Services, Inc. ("BTS").  Doc. 39.  Plaintiffs Dennis W. Vanicor and Sheila A. Vanicor (the "Plaintiffs") oppose the motion.  Doc. 42.  BTS has replied [doc. 45], making the matter ripe for decision.  The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

Having considered the parties' submissions and the arguments raised at hearing on this matter, and for the reasons stated herein, **IT IS RECOMMENDED** that the motion be **GRANTED**.

**I.**
**BACKGROUND**

On August 30, 2024, the Plaintiffs filed a Petition to Perpetuate Testimony (the "Petition") in the 14th Judicial District Court, Calcasieu Parish, Louisiana, initiating a civil action styled *Vanicor v. Barnes Transportation Services, Inc.*, No. 2024-3642 (La. 14th Jud. Dist. Ct.).  The Petition named as defendants BTS and its principal, Keith Barnes ("Mr. Barnes") (collectively, the "Defendants").  Doc. 1 att. 3, pp. 3–5.

1

The Petition references prior litigation styled *Vanicor v. Canal Insurance Co., et al.* No. 2:22-cv-0801 (W.D. La.) ("*Vanicor I*").  In *Vanicor I,* Dennis and Sheila Vanicor, plaintiffs herein, sought damages from Defendants and their insurer resulting from a motor vehicle collision that took place on or about May 20, 2021.  No. 2:22-cv-0801, doc. 53 (4/5/2024).   The parties entered into a settlement and release agreement, resolving *Vanicor I* (the "Release").[1]  The district judge dismissed *Vanicor I* after the parties filed a Notice of Settlement, indicating that "a full and final compromise has been reached between the parties to the instant litigation."  No. 2:22-cv-0801, doc. 53 (4/5/2024).

The instant Petition states that Mr. Barnes, on his own behalf and as CEO of BTS, provided affidavit testimony that was instrumental in bringing about settlement of *Vanicor I* (the "Barnes Affidavit").  Doc. 1 att. 3, pp. 3–4.  The Barnes Affidavit provided information and authenticated documents "concerning the financial condition of Barnes Transportation."  *Id.* at 6–9.  The Barnes Affidavit also provided that if any representations therein "are materially untrue, that would be grounds for Plaintiffs to set aside the settlement and release of their claims in this lawsuit and seek additional recovery from Barnes Transportation."  *Id.*  Through the Petition, Plaintiffs seek leave of court to propound discovery on and take the depositions of BTS and Mr. Barnes, "to ascertain if Petitioners have a basis to proceed to set aside the settlement . . . ."  *Id.*

On December 16, 2024, the Plaintiffs supplemented the initial Petition with a Supplemental Petition.  Doc. 1, att. 3, p. 46.  In the Supplemental Petition, Plaintiffs describe the accident and damages that gave rise to *Vanicor I,* and for the first time they formally invoke their right, per the

---

[1] A document titled Release of All Claims dated January 22, 2024 (the "Release") appears in the state court record of this matter as an attachment to Defendants' briefing raising declinatory and peremptory exceptions.  Doc. 1, att. 3, pp. 23–28.  Its contents are not considered for the purposes of this motion, but the fact and timing of the Release are treated as facts established in the Petition and its amendments.

Barnes Affidavit, to set aside the settlement of the *Vanicor I* litigation and seek additional recovery from the Defendants.  *Id.*

After removal of this matter and confirmation of this court's jurisdiction [docs. 17, 23], the District Judge issued judgment on the first motion to dismiss filed by BTS and Mr. Barnes.  Doc. 30.  The Judgment dismissed without prejudice all claims against Mr. Barnes for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, and it dismissed without prejudice all claims against BTS for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Doc. 30.  The associated Memorandum Ruling found, in relevant part, that Plaintiffs had inadequately pled fraud under the Federal Rules of Civil Procedure, reasoning:

> Barnes stated in the affidavit that he was providing accurate information as to the financial condition of BTS, based on disclosure of several enumerated documents, and knew that this information was inducing plaintiffs to settle. Under Paragraph 5(c), Barnes further states that he understands "that if the representations contained in this affidavit are materially untrue, that would be grounds for Plaintiffs to set aside the settlement" . . . Accordingly, to the extent plaintiffs are attempting to set aside the settlement under Paragraph 5(c), they are making a claim of fraud.
>
> Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." . . . While the court can infer some of the likely circumstances from the alleged affidavit itself, plaintiffs have not yet even made a direct allegation of misrepresentation. Instead, they appear to assert a right to conduct a fishing expedition and see if any basis for such a claim exists. . .  the court will not allow plaintiffs to open discovery to set aside a settlement without showing the basis of their belief that a fraud was committed. The implications from plaintiffs' complaint and supplement lack sufficient factual allegations to "make relief plausible, not merely conceivable, when taken as true."

Doc. 29, pp. 11–12 (internal citations omitted, alteration added).  Plaintiffs were granted leave to amend within 30 days.  In compliance, Plaintiffs filed a Restated Amending and Supplemental Petition naming only BTS as a defendant (the "Restated Amended Petition").  Doc. 38.  BTS now

moves for dismissal of all claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Doc. 39.

## II.
### APPLICABLE LAW

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [ . . . is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

As noted above, the District Judge found that Plaintiffs essentially allege fraud in seeking to set aside the Release. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This creates a heighted pleading standard, and the United States Fifth Circuit Court of Appeals "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent . . . and explain why the statements were fraudulent." *Hoffman v. L & M Arts*, 838 F.3d 568, 577 (5th Cir. 2016) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002)) (alteration original).

Although a court's review is generally limited to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the complaint and the motion to dismiss, provided such documents are central to the plaintiff's claim and are referenced in the complaint. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.
### THE PARTIES' ARGUMENTS AND APPLICATION

**A.     BTS argues the Restated Amended Petition fails to adequately plead fraud.**

BTS argues the Restated Amended Petition fails to satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. Because the District Judge dismissed the prior Petition and Supplemental Petition as inadequately pleading fraud-based claims, analysis of BTS's arguments begins by considering whether the Restated Amended Petition cures that defect.

At paragraphs 18 through 23, the Restated Amended Petition adds new allegations not contained in either the Petition or the Supplemental Petition. Doc. 38, pp. 8–10. Briefly summarized, these new allegations state:

- The Barnes Affidavit provides that BTS could not contribute any funds toward settlement. *Id.* at ¶ 18.

- Mr. Barnes, president of BTS, resides at a certain street address in Wilson, North Carolina, a picture of which is attached as Exhibit "A". *Id.* at ¶ 19.

- BTS's corporate charter was administratively dissolved, with supporting documents attached as Exhibit "B". *Id.* at ¶ 20.[2]

- "Barnes owned an office building and acres of storage/parking areas, which it apparently sold after the Barnes Affidavit inducing the settlement was provided and according to an article in the Triangle Business Journal 'for a couple of million dollars.'" *Id.* at ¶ 21 (attaching documentation as Exhibit "C").[3]

- Mr. Barnes made fraudulent statements to induce Plaintiffs to settle *Vanicor I*. *Id.* at ¶ 22 (referencing the Barnes Affidavit).

- Neither BTS nor Mr. Barnes have filed for "relief under any chapter of Title II of the United States Code." *Id.* at ¶ 23.

Other than these new allegations, the only other notable difference between the Restated Amended Petition and its predecessors is that it combines all allegations from the Petition and the Amended Petition together into one document, and it changes its manner of reference to Mr. Barnes and BTS, defining "Barnes Transportation" as referring to Barnes Transportation Services Inc. [doc. 38, p. 3], and defining "Barnes" as referring to "Keith Barnes." Doc. 38, p. 1.

BTS argues the new allegations are speculative, do not clarify whether Barnes or BTS owned the property that was allegedly sold, and do not logically support an allegation that the Barnes Affidavit was false when made. Doc. 39, pp. 6–7.[4] In opposition to the motion to dismiss,

---

[2] A Certificate of Administrative Dissolution indicates that BTS was administratively dissolved as of September 26, 2025. Doc. 38, att. 2, p. 7.

[3] The internet news item attached as Exhibit "C" features a headline reading "Eastern NC trucking company sells Wilson property to SC competitor," and text reading, "a pair of trucking companies have traded land in Wilson for a couple million dollars." Doc. 38, att. 3, pp. 1–2. The only mention of either Mr. Barnes or BTS is in the URL, which is: https://www.bizjournals.com/triangle/news/2024/05/04/ard-trucking-buyswilson-property-barnes-transport.html.

[4] BTS also argues that as a sophisticated party with skilled counsel who drafted the Barnes Affidavit, Plaintiffs cannot now plausibly allege they relied on the affidavit. Doc. 39, pp. 8–9. This argument relies on assertions that Plaintiffs had the opportunity to depose Barnes but chose not to, in favor of Plaintiffs' counsel drafting his affidavit. Because

the Plaintiffs assert that the Restated Amended Petition describes misrepresentations by Mr.

Barnes about BTS's financial condition:

> The Restated Amended and Supplemental Petition clearly alleges that Anthony Keith Barnes, both individually and as President of Barnes Transportation Services, Inc., made a misrepresentation as to the ability of the corporation to pay any sum in addition to the liability policy limits in Paragraphs 17 and 18.

Doc. 42, att. 1, p. 6.

It is recommended that the new allegations do not indicate in what manner the Barnes Affidavit may have been untrue or fraudulent and do not clearly indicate how Mr. Barnes misrepresented any aspect of BTS's financial condition. The most straightforward[5] reading of the new allegations is that Mr. Barnes, in his personal capacity, has assets including a home and cash proceeds from the post-Affidavit sale of an office building and storage/parking areas. The Barnes Affidavit makes no mention of Mr. Barnes' personal finances; it concerns "the financial condition of Barnes Transportation." Doc. 12, att. 1. The fact of Mr. Barnes' personal ownership of substantial assets does not make the Barnes Affidavit deceptive or misleading because the Barnes Affidavit concerns BTS's finances. If Plaintiffs meant to suggest some basis to believe that the corporate veil between BTS and Mr. Barnes should be pierced, they did not do so.[6] It is nowhere alleged that BTS was Mr. Barnes' alter ego.

An alternate reading of the new allegations is that Mr. Barnes owns a home and that BTS (not Mr. Barnes) owned an office building and parking/storage areas and sold them sometime after

---

this argument relies on facts outside the pleadings, it would not be appropriate to recommend dismissal of the claims at the pleading stage on this basis.

[5] The Restated Amended Petition defines the term "Barnes" to refer to Mr. Barnes. The paragraph relating to the real estate sale uses the name "Barnes" and the pronoun "it" to refer to the seller of the real estate. Doc. 38, p. 9, ¶ 21. Although the defined term "Barnes" should be read as referring to Mr. Barnes, the use of the pronoun "it" may indicate that its use in the sentence was a scrivener's error and that the seller of the real estate was an entity, *i.e.*, BTS.

[6] The District Judge provided a cogent discussion of the applicable law governing whether the corporate fiction may be disregarded in the Memorandum Ruling granting Defendants' first Motion to Dismiss. Doc. 29, pp. 6–7.

the Barnes Affidavit was signed.  Again, this does not necessarily render the Barnes Affidavit misleading on the pleaded facts and documents attached to the pleading.  The Barnes Affidavit acknowledges that BTS has both assets and liabilities, referencing an attached "Statement of Assets, Liabilities and Equity dated June 30, 2023."  Doc. 1, att. 3, p. 6.[7]  If Plaintiffs meant to allege that BTS owned and then sold certain assets *not disclosed* in connection with the Barnes Affidavit, they did not do so.  Instead, the Restated Amended Petition alleges, at most, that BTS owned and then liquidated certain real assets sometime between the signing of the Barnes Affidavit and the revocation of its corporate charter.  Taken as true, this does not allege that the Barnes Affidavit contains material falsehoods.

The heightened pleading standards of Rule 9(b) require allegations of fraud to identify the speaker, when the false statements were made, and "explain why the statements were fraudulent." *Herrmann Holdings Ltd.*, 302 F.3d at 565.  Here, plaintiffs' Amended Restated Petition has "set forth their allegations of the time, place, and contents of the false representations, the identity of the person making the misrepresentation, and what [defendant] obtained by making the representation" but "[t]his specificity has not improved their legal position" because it does not explain *why* the statements in the Barnes Affidavit were fraudulent, even given a generous reading. *See id*.  Accordingly, it is recommended that the motion to dismiss be granted and that the Amended Restated Petition be dismissed under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity and failure to state a claim on which relief may be granted.

---

[7] The court considers the contents of the Barnes Affidavit because it is attached and central to Plaintiffs' claims.  *Lone StarFund V*, 594 F.3d at 387.  The exhibits to the Barnes Affidavit, including the Statement of Assets, Liabilities, and Equity, are not attached to any copy of the Barnes Affidavit in the record of this matter, as far as the undersigned is aware.  *See, e.g.*, doc. 1, att. 3, pp. 46 *et seq.*; doc. 12, att. 1, pp. 15 *et seq.*

**B.      BTS argues the Release supersedes the Barnes Affidavit.**

BTS also argues that when the parties settled *Vanicor I*, the Release superseded and voided any prior agreements, including those memorialized by the Barnes Affidavit.  Doc. 39, pp. 4–5. In other words, BTS argues that language of the Release precludes the Plaintiffs from relying on language in the Barnes Affidavit that would allow the *Vanicor I* settlement to be set aside.

BTS describes the Release as an integrated contract containing the entirety of the agreement between the parties.  Doc. 39, pp. 3–4.  It contains language to this effect, stating:

> No promise, inducement, or agreement not expressed herein has been made to Appearers, and **this Release contains the entire agreement between the parties**; the terms of this Release are contractual and not a mere recital.

Doc. 39, p. 4 (quoting Release).  This language, BTS argues, supersedes the language of the Barnes Affidavit, executed 35 days earlier.  *Id.*   Additionally, BTS argues that Louisiana law bars nullification of the Release because "Louisiana law does not allow a party to bypass an 'entire agreement' clause by simply labeling a prior representation as 'fraudulent.'"  Doc. 39, p. 5.  BTS provides no jurisprudential support for this proposition.  *Id.*

Generally speaking, Federal Rule of Civil Procedure 12(b)(6) requires the court to assess the sufficiency of the pleadings by reference only to the pleadings themselves, not extrinsic material.  Documents attached to or heavily referenced in the pleadings may be examined. *Lone Star Fund V*, 594 F.3d at 387.  BTS asks the court, however, to construe and interpret the Barnes Affidavit and the Release to determine the effects flowing from one onto the other.  This involves questions of contractual interpretation and intent inappropriate to a Rule 12(b)(6) inquiry.  *See, e.g.*, *Transtelco, Inc. v. Zayo Grp., LLC*, No. EP-20-CV-00008-DCG, 2021 WL 2470367, at *4 (W.D. Tex. Apr. 5, 2021) (declining to address on a 12(b)(6) motion issues of "contract interpretation, contractual ambiguity, parole evidence" and circumstances surrounding execution

of contract); *Al-Saud v. Youtoo Media, L.P.*, No. 3:15-CV-3074-C, 2016 WL 7680712, at *2 (N.D. Tex. Aug. 23, 2016) ("any factual disputes or arguments about contract interpretation are more appropriately addressed at the summary judgment stage").  Accordingly, these arguments will not be treated as a basis to recommend dismissal.

**C.       BTS requests dismissal with prejudice.**

BTS requests dismissal with prejudice.  Doc. 39.  A dismissal with prejudice "is res judicata and effectually bars any effort, in any court, at any time to find out what the true facts were." *Shull v. Pilot Life Ins. Co.*, 313 F.2d 445, 446 (5th Cir. 1963).  While this is a serious penalty, this court has found it appropriate to dismiss fraud-based claims for failure to "explain how the factual allegations contained in the Petition meet the definition of fraud alleged therein." *See Fontenot v. Safeco Ins. Co. of Oregon*, No. 2:22-CV-05914, 2022 WL 17586580, at *2 (W.D. La. Dec. 12, 2022).

In this case, dismissal with prejudice is appropriate.  It must be emphasized that the District Judge's Memorandum Ruling expressed clear skepticism that in the instant matter Plaintiffs "appear to assert a right to conduct a fishing expedition" and stated that "the court will not allow plaintiffs to open discovery to set aside a settlement without showing the basis of their belief that a fraud was committed." Doc. 29, p. 12.  Despite the Memorandum Ruling's detailed instructions as to the inadequacy of Plaintiff's attempts to plead fraud-based claims, the Plaintiffs still have not "made a direct allegation of misrepresentation." *Id.*  Plaintiffs were also warned that failure to amend could result in dismissal with prejudice.  Doc. 29.  Considering these circumstances, dismissal with prejudice is warranted.

### III.
### CONCLUSION

Accordingly, it is recommended that the motion to dismiss [doc. 39] be **GRANTED** and, accordingly, that the Amended Restated Petition be **DISMISSED WITH PREJUDICE** under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity and failure to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), any party aggrieved by this Report and Recommendation has 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lake Charles, Louisiana, this 27th day of May, 2026.

_____
THOMAS P. LEBLANC
**UNITED STATES MAGISTRATE JUDGE**

11